[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The dissolution of the marriage between the parties was granted by Kaplan J. on December 16, 1991. Subsequent to the acrimonious dissolution two issues arose via Motions for Contempt. One, the defendant claimed that the plaintiff failed to cooperate in proceeding to obtain the Jewish Divorce or "Get"; and secondly that the plaintiff failed to return 18 CT Page 5013 Silver dollars that were in her possession to the defendant husband.
THE GET
Even though they have been divorced under civil law, traditional Jews must obtain a divorce or "get" from a Jewish Rabbinic court or "Beth Din", if either of the parties seek to be married subsequently in a traditional Jewish marriage ceremony conducted by a conservative or Orthodox Rabbi.
In this case the court ordered both parties to cooperate in obtaining such a "get". There is some evidence to show that both sides are progressing very slowly. Noting that women who have been denied the "Get" are deprived of the right to remarry in a traditional Jewish ceremony this court implores each partner to proceed with the process immediately.
18 Silver Dollars
The defendant asks this court to hold the plaintiff in contempt for failing to return 18 silver dollars. The testimony shows that the coins in question were the coins used in the traditional Jewish ceremony called the "Pidyan Haben" or the redemption of the first born son. The ceremony and historical basis is described as follows:
"Because at one time the firstborn were consecrated to God it was necessary to redeem them from Temple service — with five shekels according to the biblical command. Despite the subsequent destruction of the Temple, this practice of redemption continued and still exists today."
Stassfield, The Second Jewish Catalogue, Jenner Publication Society, p. 38.
Here the husband testified that eighteen silver dollars were used at the redemption ceremony. He noted that the coins used were eighteen mint silver dollars, collected by his mother, with each silver dollar matched to the year of birth of a relative within the family tree. He further argued that the number eighteen was significant in that it represented luck.
The plaintiff testified that she did not know how many coins were used at the ceremony, and that the coins were stored in her safety deposit box for over 20 plus years. When the plaintiff and the defendant's attorney went to the safety deposit box only five silver dollars (ordinary silver dollars) and eighteen Kennedy half-dollars (all minted during the 1960's) were found. Plaintiff further testified that she did CT Page 5014 not at any time remove the silver dollars. Rabbi Jonathan Rosenbaum, Ph.D testified that the ceremony "Pidyan Haben" required only five silver dollars, and that he never heard of more than five silver dollars being used to redeem.[1] This testimony that only five silver shekels or dollars is required is in accord with all the authorities brought to the attention of this court i.e. Greenstone, The Jewish Religion, Philadelphia (1929) p. 179; Roseneau, Jewish Ceremonial Institutions and Customs, New York (1925) p. 140
In considering the testimony of the witnesses this court finds that there is insufficient evidence to establish the existence of the eighteen silver dollars. The motion for contempt is denied.
There are many cases where to guess at the truth would be an injustice to the parties. This is such a case. For the parties this court offers the following quoted from:
 The Language of Judaism, Simon Glustrom, New York (1966). . . While the judge should not waiver in his execution of justice, especially when two litigants come before him — for an act of mercy to one party may be one act of injustice to the other — the laymen is expected to imitate the other attribute of God — His mercy. The people are required to go beyond the line of strict justice (Lifnim Meshurat hadin) and to live in accordance with those greater ideals which the court cannot enforce. In his relations with his fellow man, a person should be guided by compassion and trust rather than by the literalness of justice." p. 313.
NORKO, JUDGE